STARLING REALTY CORPORATION, Appellant, *v.* STATE OF NEW YORK, Respondent.

(Claim No. 25342.)

273

Argued May 22, 1941; decided July 29, 1941.

*Alfred S. Schechter* for appellant. There was no lack of money available within the meaning of subdivision 7 of section 3 of the Public Buildings Law (Cons. Laws, ch. 44) authorizing the cancellation of the lease. (*McNulty* v. *City of New York*, 168 N. Y. 117; *Hydraulic Race Co.* v. *Greene*, 230 App. Div. 374; 257 N. Y. 540; *People ex rel. Graves* v. *Sohmer*, 207 N. Y. 450; *McMaster* v. *State*, 108 N. Y. 542; *Danolds* v. *State*, 89 N. Y. 36; *Campbell* v. *State*, 240 App. Div. 304.) Assuming there to have been a lack of money available, it was caused by the State's own wrongful act in refusing to request funds of the Social Security Board, and under these circumstances the State cannot avail itself of such non-availability of funds as justification for the cancellation of the lease. (*Amies* v. *Wesnofske*, 255 N. Y. 156; *Matter of Casualty Co.* [*Bliss Co.*], 250 N. Y. 410; *Noble* v. *Higgins*, 214 App. Div. 135; 243 N. Y. 538; *Dwyer* v. *Interboro R. T. Co.*, 241 N. Y. 616; *Cameron-Hawn Realty Co.* v. *City of Albany*, 207 N. Y. 377; *Patterson* v. *Meyerhofer*, 204 N. Y. 96; *Home Bank* v. *Drumgoole*, 109 N. Y. 63; *City of Syracuse* v. *Dales Engineering Co.*, 233 App. Div. 417; *Brennan Constr. Co.* v. *State*, 117 Misc. Rep. 816; *Hulbert* v. *Felber Engineering Works*, 75 Misc. Rep. 621.)

*J. S. Truman* and *Lewis B. Parmerton* for Owego National Bank, *amicus curiæ*.

*John J. Bennett, Jr., Attorney-General* (*James H. Glavin, Jr.*, and *Jacob S. Honigsbaum* of counsel), for respondent. Paragraph " Seventeenth " of the lease put claimant on notice that funds might not be available during its term. (*Nellis* v. *State*, 204 App. Div. 176.)

LEWIS, J. An authorized agency of the State canceled mid-term a written lease of office space. We `are to determine whether formal conditions stated in the lease are sufficient in law to relieve the State from further liability thereunder.

The claimant, Starling Realty Corporation, is the owner of an office building in Ossining, New York. In October, 1937, after building alterations costing $1,200 had been made to accommodate the tenancy, the State leased for a term of three years commencing November 15, 1937, a portion of claimant's building for the use of the Division of Placement and Unemployment · Insurance. The annual rent reserved was $2,200, payable in equal monthly installments of $183.33. The State entered into possession in November, 1937, and continued in possession until July 31, 1938, when it vacated the premises after notice of cancellation had previously been given by letter dated June 29, 1938. In that written notice an accredited agent of the State advised the claimant that the lease was canceled " pursuant to the provisions of paragraph designated ' Seventeenth ' of our lease with you." The reason assigned for such action was " that the necessary moneys are not and have not been made available with which to pay the rent."

The Court of Claims dismissed upon the merits the present claim for rent filed by the landlord against the State for a period of four months beginning August 1, 1938. The Appellate Division affirmed, two justices dissenting. The claim is here upon appeal, as of right, by the landlord-claimant who asserts that, at the time of cancellation, there was no lack of funds available for rent payable by the State as

agreed in the lease; and that if it be assumed that money was not available, the State cannot take advantage of its own wrongful act in refusing to request funds from the Federal Social Security Board from which the rent in suit would have been payable.

The position thus taken by the claimant upon this appeal is opposed to findings of fact by the Court of Claims which have been affirmed by the Appellate Division. Upon the record before us we cannot say that there is no evidence to support those findings. Accordingly they supply the factual basis upon which we must determine whether the reason assigned by the State for the cancellation of the lease, when considered with the provisions of paragraph seventeen of the lease itself, is legally sufficient to relieve the State of New York from liability for rent after July 31, 1938.

Before considering the legal aspect of paragraph seventeen of the lease we set forth in summary the facts found by the Court of Claims which negative certain assertions now made by the claimant.

The Division of Placement and Unemployment Insurance was created for the purpose of administering the Unemployment Insurance Law (Labor Law, Cons. Laws, ch. 31, art. 18). For the fiscal year beginning July 1, 1938, the Legislature appropriated $304,916 for the maintenance of the Division. (L. 1938, ch. 20.) Meantime, and in accord with section 502 of the Social Security Act (U. S. Code, tit. 42, ch. 7) the Federal government had made a grant to the State of more than $5,500,000 for use in the administration of that law. Thereafter the activities of the Division of Employment were combined with the Bureau of Unemployment Compensation and, in accord with an agreement between the State and Federal governments, the appropriation by the State and the Federal grant to the State were turned over to the Social Security Board. As a part of the latter arrangement the Social Security Board agreed to furnish all funds necessary to operate the combined New York State Employment Service and the Bureau of Unemployment Compensation, including personal service,

*rent* and equipment. Under rules of the Social Security Board, the Division of Placement and Unemployment Insurance was required quarterly to submit an itemized line budget to the Social Security Board. The budget was subject to approval by the Board which had the right to allow the budget in its entirety or to disallow any item. The allocation of funds by the Social Security Board to the State Division of Placement and Unemployment Insurance was based upon the budget as approved — the State Division being limited in its disbursement of funds to the specific uses and purposes, and to the amounts, set forth in the budget. On June 1, 1938, the Social Security Board recommended to the State Division of Placement and Unemployment Insurance the discontinuance of a number of small offices, including the office at Tarrytown. It requested, however, that if the State officials believed any one or more of the offices named in the letter should be continued after June 28, 1938, a full explanation of such need should accompany the budget request for the quarter beginning July 1, 1938. On June 14, 1938, the State Division of Placement and Unemployment Insurance, by letter to the Social Security Board, " in good faith and for good and sufficient reasons," recommended the discontinuance of the Ossining office instead of the Tarrytown office and the recommendation was acted upon and approved by the Social Security Board. The itemized line budget submitted by the State Division to the Social Security Board for the quarter beginning July 1, 1938, made provision for the rental of the Ossining office for only one month — being the month of July, 1938, which is the last month for which rent was paid by the State to the claimant. That item in the quarterly budget was approved by the Social Security Board and, as indicated above, was paid to the claimant. On June 29, 1938, the notice, to which reference has been made, was given in writing, viz., that because the necessary moneys were not available for the payment of rent for the Ossining office, the lease was canceled as of July 31, 1938, pursuant to the provisions of the

"seventeenth" paragraph. Finally there is the finding of fact that on and after June 29, 1938, the necessary moneys were not available for the rental of the Ossining office after July 31, 1938.

From these facts found by the Court of Claims upon ample evidence, and which must control our decision (Civ. Prac. Act, § 589, subd. 2), we pass to a consideration of the paragraph of the lease which was mentioned in the letter of cancellation and is one of the express conditions upon which the claimant and State agreed:

"*Seventeenth.* It is understood and agreed by and between the parties hereto that pursuant to subdivision 7 of section 3 of the Public Buildings Law, the contract of the State hereunder shall be deemed executory only to the extent of the moneys available to the Superintendent of Public Works for the leasing of said premises and that no liability shall be incurred by the State beyond the money available for such purpose; provided that, if the moneys available therefor are moneys appropriated for and made available to one or more departments, commissions, boards or officers other than the Superintendent of Public Works the contract of the State hereunder shall be deemed executory only to the extent of the moneys available to the one or more departments, commissions, boards or officers to which the premises shall be allotted by such Superintendent of Public Works and that no liability in such cases shall be incurred by the State beyond the money available for such purposes."

The insertion in the lease of the foregoing provision which, in unmistakable terms, conditions the State's liability, was in accord with the requirement of a declared public policy. (Public Buildings Law [Cons. Laws, ch. 44], § 3, subd. 6.) We may not ignore the limitations by which the Legislature has thus restricted the expenditure of public moneys. "They are wise and should be enforced. The State has chosen to enact something similar to the Statute of Frauds for its own protection. Those dealing with it do so knowing this fact and at their own risk. * * * However inequi-

table the conduct of the state may be it has said that it shall only be responsible upon one condition. \* \* \* " (*Belmar Contracting Co.* v. *State of New York* [ANDREWS, J.], 233 N. Y. 189, 194.) In the present case inequity may have resulted to the claimant but here again we must " give effect to the settled rule that contracts are made in submission to existing legislation." (*People ex rel. City of New York* v. *Nixon*, 229 N. Y. 356, 361.) In this instance the claimant was made aware, both by its implied knowledge of the law and by an express provision in the lease itself, that the liability of the State for rent reserved for the full term was conditional.

The charge by the claimant that the State was guilty of a wrongful act in refusing to request funds from the Federal Social Security Board from which the rent here in suit would have been payable, is without merit. It is argued that the respondent may not take advantage of the fact that money was not " available " when it made no request therefor. We interpret the word " available " as used in the lease as meaning available in the course of ordinary budgetary procedure. This implies a request made by the responsible head of a department for those items only which are necessary to a proper and efficient administration of the department, and the approval of those items by the final budgetary authority. We have in this case a finding by the Court of Claims that " the State Division of Placement and Unemployment Insurance \* \* \* in good faith and for good and sufficient reasons recommended the discontinuance of the Ossining office \* \* \* and the recommendation was approved and acted upon by the Social Security Board." Even if it be assumed that the item, if requested, would have been approved — a conclusion for which there is no basis in the evidence — it could hardly be said that funds not necessary to a proper and efficient administration of the department would be " money available for such purposes " within the language chosen by the Legislature and employed in paragraph seventeen of the lease.

The judgment should be affirmed, with costs.

RIPPEY, J. (dissenting). Under the terms of clause seventeenth of the lease made with the Department of Public Works in behalf of the State Division of Placement and Unemployment Insurance for certain premises at Ossining, for the use of that department of the State government, the lease was " executory only to the extent of the moneys available " for payment of the rental although the term of the lease was stated to be for three years from the 15th day of November, 1937. Although the landlord fully performed the provisions of the lease on its part to be performed and the department was in possession under the terms of the lease, notification was given by that department of its termination as of July 31, 1938.

It has been found that there were ample funds available in the hands of the Social Security Board, appropriated either by the State or Federal government, with which to pay the rental on this lease for the fiscal year commencing July 1, 1938. The same person who served that notice, in spite of the proposal of the Federal Social Security Board to continue the Ossining office, requested its discontinuance and on account of that request the Social Security Board failed to include in its budget for the period subsequent to July 31, 1938, the necessary allocation with which to satisfy the rent. The lower courts have construed the term " available " to refer only to the funds which might be allocated by the Social Security Board for the payment of the rent. We think that, as a matter of law, such construction is not permissible in view of the wording of the lease, applicable findings of fact in the lower court, the facts and circumstances surrounding the leasing, and the purpose of the Legislature and of Congress in making the appropriations for the fiscal year commencing July 1, 1938. What was meant and intended by the parties to the lease was that the lease should be executory in the event that there was inadequate legislative appropriation available.

The facts as found establish that the Social Security Board had the power to allocate the funds which were placed in its hands for the maintenance, among other things, of the

Ossining office without the request, consent or approval of the State agency. Nevertheless, it acted upon the report of the State agency that that office was no longer necessary and, as a consequence, failed to allocate necessary funds for rental purposes. The contract must be construed in the light of fair dealings between the parties (*Campbell* v. *State*, 240 App. Div. 304, 309; *Patterson* v. *Meyerhofer*, 204 N. Y. 96; *Amies* v. *Wesnofske*, 255 N. Y. 156). There was nothing in the facts and circumstances or in the findings of fact which established an obligation on the part of the State any different than would exist under similar facts between individuals. Concededly there were moneys available in the hands of the Federal Social Security Board by legislative and congressional appropriation for the payment of the rent. Those appropriations were made with the intent and purpose, among other things, of providing funds for carrying out the particular lease.

Applicable statutes and appropriation measures are referred to and fully discussed in the dissenting opinion of Mr. Justice HEFFERNAN in the court below and our decision here might well be based upon that opinion. In view of our construction of the lease and in the light of the applicable law, the conclusion of the Court of Claims " that no moneys were available for the payment of the rent reserved in said lease after July 31, 1938," is not sustained by the facts.

The judgment appealed from should be reversed and judgment should be directed in favor of the claimant for the relief demanded, with costs.

LEHMAN, Ch. J., LOUGHRAN and DESMOND, JJ., concur with LEWIS, J.; RIPPEY, J., dissents in opinion in which FINCH and CONWAY, JJ., concur.

Judgment affirmed. (See 286 N. Y. 696.)