■ ROCHESTER FUND MUNICIPALS et al., Respondents, v AMSTERDAM MUNICIPAL LEASING CORPORATION et al., Defendants, and CITY OF AMSTERDAM, Appellant. [791 NYS2d 698]—

Crew III, J. Appeal from two judgments of the Supreme Court (Sise, J.), entered March 30, 2004 in Montgomery County, which granted plaintiffs' motion for summary judgment against defendant City of Amsterdam.

In 1990 and 1991, defendant City of Amsterdam executed two consent orders with the Department of Environmental Conservation, wherein the City agreed to abate the excessive level of sewage sludge generated by its sewage treatment plant. To that end, the City contracted for the construction of a new sludge processing facility. The project was financed through the issuance of municipal bonds, and payment of the principal and interest on said bonds was accomplished by a lease purchase agreement, whereby the City agreed to make annual lease payments to plaintiffs' trustee until the year 2019. Difficulties allegedly ensued regarding the operation of the facility, prompting the City, through its Common Council, to not appropriate funds in its 1998 budget for the lease payments due that year and to terminate the lease. Consequently, the City defaulted on its July 1998 lease payment and all payments thereafter. As a result, plaintiffs commenced this action against, among others, the City to recover payments due under the lease. Following joinder of issue, the City moved to dismiss the complaint. While Supreme Court dismissed some of the causes of action contained therein, it denied the motion with regard to the contract cause of action asserting breach of the lease, and we affirmed (296

AD2d 785, 786-787 [2002]). Following considerable discovery, plaintiffs moved for summary judgment against the City, which motion was granted by Supreme Court, and the City now appeals.

The City argues that Supreme Court erred in granting summary judgment to plaintiffs inasmuch as the lease agreement's executory clause was triggered, thereby absolving the City of any liability under the lease. General Municipal Law § 109-b (2) (f) requires that all contracts with a municipality contain an executory clause providing, in relevant part, as follows: "This contract shall be deemed executory only to the extent of monies appropriated and available for the purpose of the contract, and no liability on account thereof shall be incurred by the political subdivision beyond the amount of such monies." Such clauses are enforceable only where it has been established that funds were not available "in the course of ordinary budgetary procedure[s]" (*Starling Realty Corp. v State of New York*, 286 NY 272, 278 [1941]). Available funds, however, are funds that are necessary to the proper administration of a particular municipal project. Hence, even though a municipality may possess sufficient funds to satisfy a particular obligation, such funds cannot be deemed "available" if the expenditure thereof would be improvident (*see id.* at 278). On the other hand, "any unavailability of funds must not have been the result of an improper act or omission by the [municipality]" inasmuch as it "is bound by the same rules of honesty and justice as individuals when contracting" (*Green Is. Contr. Corp. v State of New York*, 99 AD2d 330, 332 [1984], *lv denied* 66 NY2d 605 [1985]).*

With these principles in mind, the issue here distills to whether funds were available in the ordinary course of budgetary procedures for the underlying lease payments. The City claims that they were not in that the facility did not function as proposed, as the result of which it was necessary to shut down the facility and construct an alternate facility. Assuming that to be true, the City indeed may well have been justified in invoking the executory clause. On the other hand, a fair reading of the record reveals that the City may have invoked the executory clause because a new administration felt that the contract entered into was financially ill-advised and that it could do better by constructing a new and different facility. If that is the

---

* Indeed, the lease purchase agreement here provides that the City shall "include in its budget request for each Fiscal Year the Lease Payments to become due in such Fiscal Year, and will use all reasonable and lawful means at its disposal to insure the appropriation of money for such Fiscal Year sufficient to pay the Lease Payments coming due therein."

case, it could be said that the City made such funds unavailable as a matter of financial convenience, which would not justify invocation of the executory clause (*see Adson Indus. v State of New York*, 28 AD2d 1183, 1183-1184 [1967]). Resolution of those issues will, by and large, require credibility determinations, which can only be made upon a trial of this matter.

Cardona, P.J., Peters, Carpinello and Rose, JJ., concur. Ordered that the judgments are reversed, on the law, without costs, and motion denied.